**Joel WHITE, Petitioner–Appellant,**

v.

**John LAMBERT, Superintendent, Respondent–Appellee.**

No. 02–35550.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Filed June 10, 2004.

Amy M. Schwering, Federal Defenders of Eastern Washington and Idaho, Spokane, WA, for the petitioner-appellant.

Christine O. Gregoire and Paul D. Weisser, Washington State Attorney General's Office, Olympia, WA, for the respondent-appellee.

Before: NOONAN, WARDLAW, and
PAEZ, Circuit Judges.

## OPINION

PAEZ, Circuit Judge.

Joel White challenges the State of
Washington's authority to continue to con-
fine him after his transfer in November
1999 from a Washington state prison to a
privately-run prison in Colorado. Unlike
most habeas petitioners, White is not chal-
lenging the validity of his state court con-
viction, but rather the administrative deci-
sion to transfer him from one prison to
another. White alleges that the transfer,
initiated by the Washington Department of
Corrections, was in violation of both the
United States and Washington constitu-
tions. After exhausting his state court
remedies, White filed a petition for a writ
of habeas corpus in the federal district
court for the Eastern District of Washing-
ton, invoking jurisdiction pursuant to 28
U.S.C. § 2241.

The district court, after rejecting the
State of Washington's argument that juris-
diction was proper only under 28 U.S.C.
§ 2254, allowed White to proceed under 28
U.S.C. § 2241, but denied his petition on
the merits. The district court also denied
White's motion for a certificate of appeala-
bility ("COA") as moot, reasoning that a
COA was not necessary when a petitioner
seeks habeas relief under 28 U.S.C.
§ 2241.

White's appeal raises several issues that
we have not previously addressed concern-
ing the proper jurisdictional statute and
procedural requirements for a state pris-
oner attacking the legality of his detention
resulting from an administrative decision
by state prison authorities. The circuits
that have addressed these issues are divid-
ed on whether jurisdiction is proper under
28 U.S.C. § 2241 or under § 2254, and on
whether a COA is required. We hold that
the district court erred in concluding that
White could seek habeas relief under 28
U.S.C. § 2241, which is properly under-
stood as a general grant of habeas authori-
ty that provides federal court jurisdiction
to a state prisoner when that prisoner is
not in custody pursuant to a "state court
judgment." Because White was "in custo-
dy pursuant to a state court judgment" at
the time he filed his federal habeas peti-
tion, 28 U.S.C. § 2254 is the proper juris-
dictional basis for his habeas petition.

We further hold that, although 28 U.S.C.
§ 2254 was the proper statutory basis for
White's petition, he did not need to obtain
a COA to appeal the district court's judg-
ment. The requirement for a COA in 28
U.S.C. § 2253, that the "detention com-
plained of" must "arise[ ] out of" state
court process, does not apply to White's
situation. In his habeas petition White
attacks his incarceration in a private Colo-
rado prison, which arises out of a decision
by officials at the Washington Department
of Corrections, and not from a state court
process.

Finally, we hold that White's constitu-
tional claims fail because he has no consti-
tutional right to imprisonment in a specific
prison, and the state court's determination
was not "contrary to" or "an unreasonable
application of, clearly established Federal
law." 28 U.S.C. § 2254(d)(1). According-
ly, we affirm the district court's dismissal
of White's habeas petition.

## I.

### BACKGROUND

In October of 1999, in response to over-
crowding in Washington state prisons, the
Washington State Department of Correc-

tions ("DOC") contracted for prison space with the Crowley County Correctional Facility ("CCCF"), a private, for-profit prison located in Colorado. Joel White was among a group of inmates that were transferred from DOC facilities to CCCF on November 2, 1999. On June 6, 2000, White was transferred from CCCF back to a DOC facility in Washington State. White did not consent to either transfer.

On January 18, 2000, White filed a habeas petition in the Washington Supreme Court arguing that no legal authority existed to detain him in CCCF. The Washington Supreme Court construed White's filing as a "personal restraint petition" under Washington Rule of Appellate Procedure 16.4(c)(6), and stayed consideration pending the outcome of a case consolidating the claims of three other Washington state prisoners who objected to being transferred to CCCF. The Washington Supreme Court ultimately affirmed the legality of White's transfer to CCCF and denied White's petition. That order became final on May 18, 2001.

On March 1, 2002, White filed a habeas petition under 28 U.S.C. § 2241 in the District Court for the Eastern District of Washington, alleging that the transfer violated, among other things, his Fourteenth Amendment Due Process rights. The district court dismissed the petition with prejudice, and denied White's subsequent motion to reconsider. White then sought a COA from the district court. The district court denied the request as moot, ruling

that a COA was not required to appeal the denial of a petition under 28 U.S.C. § 2241.

## II.

### JURISDICTION AND STANDARD OF REVIEW

■ We have jurisdiction over White's timely appeal pursuant to 28 U.S.C. §§ 1291 and 2253. We review *de novo* the district court's decision to deny a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *See Hunter v. Ayers,* 336 F.3d 1007, 1011 (9th Cir.2003). We also review *de novo* the district court's decision to deny a 28 U.S.C. § 2254 habeas petition. *See Alcala v. Woodford,* 334 F.3d 862, 868 (9th Cir.2003).

## III.

### ANALYSIS

A. *28 U.S.C. § 2241 versus 28 U.S.C. § 2254*

■ Whether a state prisoner such as White can proceed under 28 U.S.C. § 2241 when challenging an administrative decision to transfer him from one prison to another, but not the underlying state court judgment, is an open question in this circuit. We agree with the majority of circuits that have considered this issue that 28 U.S.C. § 2254 is the proper jurisdictional statute for White's habeas petition.[1]

The plain text of the two statutes, 28 U.S.C. § 2241 and 28 U.S.C. § 2254, both appear to apply to White's petition. Sec-

1. *See Cook v. New York State Div. of Parole,* 321 F.3d 274, 277–79 (2d Cir.2003); *James v. Walsh,* 308 F.3d 162, 166–67 (2d Cir.2002); *Coady v. Vaughn,* 251 F.3d 480, 484–86 (3d Cir.2001); *Walker v. O'Brien,* 216 F.3d 626, 632–33 (7th Cir.2000), *cert. denied,* 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 518 (2000); *Crouch v. Norris,* 251 F.3d 720, 722–23 (8th Cir.2001); *Medberry v. Crosby,* 351 F.3d 1049, 1058–62 (11th Cir.2003). *But see Montez v.*

*McKinna,* 208 F.3d 862, 869–71 (10th Cir. 2000) (holding that § 2241 was the proper statute to challenge legality of transfer to out-of-state prison); *Greene v. Tennessee Dep't. of Corr.,* 265 F.3d 369 (6th Cir.2001), *cert. denied,* 534 U.S. 1130, 122 S.Ct. 1068, 151 L.Ed.2d 971 (2002) (allowing claim to proceed under § 2241 without any discussion as to why appropriate).

tion 2241 confers jurisdiction on a district court to issue a writ of habeas corpus when a federal or state prisoner establishes that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(a) and (c)(3). The relevant sub-section of 28 U.S.C. § 2254 confers jurisdiction on a district court to issue "a writ of habeas corpus in behalf of a person in *custody pursuant to the judgment of a State court* . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added).

■ Although the text of either statute would appear to confer jurisdiction, a proper understanding of the interaction between 28 U.S.C. § 2241 and 28 U.S.C. § 2254 leads us to the conclusion that they apply in different situations. Section 2254 is properly understood as "in effect implement[ing] the general grant of habeas corpus authority found in § 2241, as long as the person is in custody pursuant to the *judgment* of a state court, and not in state custody for some other reason, such as pre-conviction custody, custody awaiting extradition, or other forms of custody that are possible without a conviction." *Walker*, 216 F.3d at 633 (emphasis in original); *see also* Eric Johnson, *An Analysis of the Antiterrorism and Effective Death Penalty Act in Relation to State Administrative Orders: the State Court Judgment as the Genesis of Custody*, 29 New Eng. J. on Crim. & Civ. Confinement 153, 168 (2003) ("In contrast to section 2255, section 2254 does not create an alternative to the habeas corpus remedy provided in section 2241; rather, it imposes limitations on this remedy.").

This understanding of the interaction between the two statutes is bolstered by the relevant legislative history. When § 2254 was enacted in 1948, it "merely codified the requirement of exhaustion of state remedies." Johnson, *supra*, at 168. Congress' amendments to § 2254 in 1966 and in the 1996 Anti–Terrorism and Effective Death Penalty Act ("AEDPA") [2] merely imposed additional requirements on state prisoners seeking habeas relief who were in custody pursuant to a state court judgment. *Id.* As a Senate report on a bill proposing new amendments to § 2254 in 1966 stated, the bill *"revises the procedure applicable to review* by lower federal courts of petitions for habeas corpus by prisoners who have been convicted and who are in custody pursuant to the judgment of a state court." S. Rep. 89–1797, at 3663 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3663, 3663 (emphasis added).

■ By contrast, the general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment—for example, a defendant in pre-trial detention or awaiting extradition. In these situations, not covered by the limitations in § 2254, the general grant of habeas authority provided by the Constitution [3] and § 2241 will provide jurisdiction for state prisoners' habeas claims. *See, e.g., McNeely v. Blanas*, 336 F.3d 822 (9th Cir. 2003) (allowing a pre-trial detainee to proceed under § 2241).

■ This understanding of the interaction between 28 U.S.C. § 2241 and 28 U.S.C. § 2254 finds support in the Supreme Court's decision in *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). *See Walker*, 216 F.3d at 633; *Crouch*, 251 F.3d at 723. *Felker*

---

**2.** Pub.L. No. 104–132, Title I, § 104, 110 Stat. 1218.

**3.** Article I, Section 9, Clause 2.

recognized that a court's "authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'" 518 U.S. at 662, 116 S.Ct. 2333 (internal citations omitted). As the Seventh Circuit noted in *Walker*, extrapolating from the Court's holding in *Felker*, it is only when § 2254 does not apply to a state prisoner (because he is not in custody pursuant to a state court judgment) that he can resort to the Constitution, Article I, Section 9, Clause 2, and § 2241 (to the extent it is different than the Great Writ protected by the Constitution). 216 F.3d at 633. Although "§ 2254 does not contain exclusivity language along the lines of § 2244(a) and § 2255 ... as a practical matter the requirements of § 2254 must be met by all state prisoners filing petitions for writs of habeas corpus after conviction." *Id.* We agree with the Seventh Circuit and likewise conclude that, "*Felker* leads to the conclusion that when a [state] prisoner begins in the district court, § 2254 and all associated statutory requirements apply no matter what statutory label the prisoner has given the case." *Id.*

We have, in a different context, drawn the same conclusion from *Felker*. In *Greenawalt v. Stewart*, the petitioner, seeking to challenge the constitutionality of his execution, sought habeas relief under § 2241. 105 F.3d 1287 (9th Cir.1997) (per curiam). Although the petitioner relied on § 2241, we analyzed whether the petition was a second or successive one under § 2244(b)(3)(A), which by its terms applies only to habeas petitions brought under § 2254. Thus, we implicitly determined that § 2254 was the proper jurisdictional statute. In so doing, we noted that "[t]he Supreme Court has instructed us that the authority of the federal courts to grant habeas relief to state prisoners under

§ 2241 is limited by 28 U.S.C. § 2254." *Id.* at 1287 (citing *Felker*, 518 U.S. at 662, 116 S.Ct. 2333).

Our conclusion that § 2254 is the exclusive avenue for a state court prisoner to challenge the constitutionality of his detention is also consistent with our precedent. In addition to *Greenawalt*, we previously have held that a prisoner's habeas petition challenging his release date was subject to the successive petition provisions of AEDPA, 28 U.S.C. § 2244(b). *See Hill v. Alaska*, 297 F.3d 895 (9th Cir.2002). In *Hill* we analyzed whether 28 U.S.C. § 2244(b), which bars successive petitions unless certain conditions are met, would be a bar to Hill's new claim challenging the calculation of his release date. *Hill* implicitly held that the petitioner's habeas challenge to the calculation of his release date was properly brought under 28 U.S.C. § 2254 because the determination of whether a petition is successive under 28 U.S.C. § 2244(b) is applicable only to 28 U.S.C. § 2254 petitions. *See* 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 ...."). *Hill* also noted that the factual circumstance before it was remarkably similar to the situation faced by the Eighth Circuit in *Crouch*, where the court rejected the petitioner's contention that 28 U.S.C. § 2241 (not 28 U.S.C. § 2254) was the proper vehicle for his claim. *Id.* at 897–98.

All that remains to be answered is whether 28 U.S.C. § 2254 applies to White in this particular case; that is, we must determine whether at the time he filed his habeas petition he was "in custody pursuant to a state court judgment." The majority view of the circuits that have analyzed this question is to treat this clause as directing a status inquiry into the source of the petitioner's custody, and not an inquiry into the target of the petitioner's

challenge. *See Walker,* 216 F.3d at 633; Johnson, *supra,* at 162 ("[the] predominant, view [of the meaning of pursuant to a State court judgment] is that Congress ... was concerned primarily with the source of the prisoner's custody, rather than with the target of the prisoner's complaint. What matters, in this view, is whether the prisoner's 'custody' is attributable, at least in part, to 'a judgment of a State court.' "). Although White is arguably attacking his state custody in a private Colorado prison as resulting from a decision of the Washington DOC, and not as a result of his state court judgment, the majority view has rejected this narrow interpretation. *See, e.g., Cook,* 321 F.3d at 278 (rejecting petitioner's contention that § 2241 was applicable because "his custody is 'pursuant to' an order of the parole board rather than a state court").

Other circuits that have considered whether 28 U.S.C. § 2241 is appropriate in this context have followed a slightly different approach to reach the same conclusion that 28 U.S.C. § 2254 is the exclusive vehicle for claims similar to White's. The Second, Third and Eleventh Circuits relied upon the canon of statutory construction that "when two statutes cover the same situation, the more specific statute takes precedence over the more general one." *Coady,* 251 F.3d at 484; *see also Cook,* 321 F.3d at 279 n. 4; *Medberry,* 351 F.3d at 1060. According to this approach, the more general provision should not be applied when "doing so would undermine limitations created by a more specific provision." *Coady,* 251 F.3d at 484 (quoting

*Varity v. Howe,* 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)).

If we were to allow White to proceed under 28 U.S.C. § 2241, he would not be subject to: (1) the one-year statute of limitations provision of AEDPA, 28 U.S.C. § 2244(d)(1); (2) the extremely deferential review of state court decisions under 28 U.S.C. § 2254(d)(1) and (2); (3) AEDPA's limitations on successive petitions, 28 U.S.C. § 2244(b)(2); and (4) state court exhaustion requirements. As the Third Circuit concluded in *Coady,* "[a]llowing [petitioner] to file the instant petition in federal court pursuant to Section 2241 without reliance on Section 2254 would circumvent this particular restriction [§ 2244(b)] ... and would thereby thwart Congressional intent." 251 F.3d at 484–85.[4]

■ We need not resort to this canon of construction, however, because the canon is applicable only when it is impossible to give effect to both provisions. As noted above, when the petitioner meets the threshold requirement of being in custody pursuant to a state court judgment, § 2254 is properly seen as a limitation on the general grant of habeas authority in § 2241. The general grant of habeas authority under § 2241, however, remains available for state prisoners who are not in custody pursuant to a state court judgment. Because 28 U.S.C. § 2241 and 28 U.S.C. § 2254 cover separate situations, there is no need to resort to the canon of statutory construction employed by the Second, Third and Eleventh Circuits.

**4.** Other circuits that have reached the same conclusion have expressed similar variations on the theme of using Congressional intent to resolve which statute should apply. As the Second Circuit reasoned in *James,* "[S]ection 2254(b)(1) requires state prisoners to exhaust all available state court remedies before filing a Section 2254 petition, whereas Section 2241 contains no such exhaustion requirement. Had Congress intended to make Section 2241 available to state prisoners, it would likely have required, in the interests of comity, that state prisoners challenging the execution of their state-imposed sentences first exhaust their remedies in the state courts." 308 F.3d at 167.

Finally, all the circuits that adhere to the majority view draw a distinction between a *federal* prisoner's ability to resort to § 2241 to attack the execution of his sentence, and the structural differences in the habeas statutes that make a state prisoner's resort to § 2241 improper in the same circumstances. For example, as noted by the Seventh Circuit in *Walker*, 28 U.S.C. § 2255, the federal counterpart to § 2254, is expressly written to prevent attacks on the execution of the sentence by a federal prisoner. 216 F.3d at 632–33 ("The specific focus of the statutory language on the original judgment and sentence ha[s] led courts to find that challenges brought by federal prisoners that implicate the fact or duration of confinement but do not stem from the original conviction or sentence can be brought only under 28 U.S.C. § 2241, the general habeas corpus statute."); *see also Coady*, 251 F.3d at 485 ("[W]e are not unmindful of the cases which hold that *federal* prisoners challenging some aspect of the execution of their sentence . . . may proceed under Section 2241. This difference arises from the fact that Section 2255 . . . is expressly limited to challenges to the validity of the petitioner's sentence. Thus, Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."); *Crouch*, 251 F.3d at 722–23 (same).

Only the Tenth Circuit, in *Montez v. McKinna*, 208 F.3d 862 (10th Cir.2000), has articulated the view that a § 2241 challenge is appropriate in circumstances similar to those presented by White's petition.[5] Relying primarily on unpublished Tenth Circuit decisions, *Montez* noted that

"[a]lthough the typical route is generally § 2254, a state prisoner may bring a habeas action under § 2241 or § 2254." 208 F.3d at 865. The Tenth Circuit itself expressed some uncertainty about how to characterize a petition challenging the validity of an administrative decision ordering a prison transfer:

> Analytically, Montez's petition seems to be a hybrid. Montez attacks the execution of his sentence as it affects the fact or duration of his confinement in Colorado. Such an attack, focusing on where his sentence will be served, seems to fit better under the rubric of § 2241. Another component of the petition, which could conceivably come under § 2254, attacks the continued validity of his sentence imposed by Wyoming in light of the allegedly unconstitutional transfers.

*Id.*

The Tenth Circuit appears to implicitly draw a distinction between habeas petitions that attack the underlying state court judgment, which the court felt would be appropriate under § 2254, and habeas petitions which do not challenge the underlying state court judgment but rather attack the execution of a sentence, which the court determined fit better under § 2241. We disagree with this position, however, because it stems from a misunderstanding of how § 2254 operates as a limitation on the general grant of habeas authority in § 2241, and also ignores the views expressed by the Supreme Court in *Felker*.

■ In sum, we adopt the majority view that 28 U.S.C. § 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court

---

5. The Sixth Circuit also has allowed a state prisoner to proceed under § 2241 in a situation akin to White's, but with no discussion as to why § 2241, and not § 2254, was appropriate. *Greene*, 265 F.3d at 370 ("The key issue is whether a state prisoner seeking relief under § 2241, but not directly or indirectly challenging a state court conviction or sentence, is required to obtain a COA before appealing.").

judgment, even when the petitioner is not challenging his underlying state court conviction. We agree with the reasoning of the Seventh Circuit that, as the Supreme Court hinted in *Felker*, § 2254 is properly seen as a limitation on the general grant of habeas authority in § 2241 that is triggered by a state prisoner who is in custody pursuant to a state court judgment.[6]

### B. There Is No COA Requirement When A State Prisoner Challenges An Administrative Decision

Having determined that the proper jurisdictional basis for White's habeas petition is § 2254, we must next consider whether White was required to obtain a COA pursuant to § 2253 before we can address the merits of his claim. Whether a COA is required in appeals brought by state prisoners in situations similar to White's is an open question in this circuit. *Cf. McNeely*, 336 F.3d at 832 n. 10 (noting that whether a COA was needed when petitioner proceeded under 28 U.S.C.

§ 2241 was an open question). Section 2253(c)(1) provides, in relevant part:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding *in which the detention complained of arises out of process issued by a State court;*

28 U.S.C. § 2253(c)(1)(A) (emphasis added).

■ We hold that a COA is not required when a state prisoner challenges an administrative decision regarding the execution of his sentence. Our conclusion is supported by a comparison of the text in 28 U.S.C. § 2253 to the text in the other major AEDPA amendments, which reflects that Congress intended to shift the inquiry from the fact of detention to the detention decision complained of by the state prisoner.[7]

---

**6.** We note that in holding that 28 U.S.C. § 2254 is the proper jurisdictional statute in this case we encounter some statutory awkwardness with various provisions of AEDPA when they are applied to the present situation. "When Congress wrote the AEDPA, it appears to have been thinking not of these prisoners [state prisoners who challenge state administrative decisions], but of prisoners who challenge their convictions or sentences. This preoccupation is evident, for example, in the AEDPA's one-year statute of limitation ... which generally begins running when the state 'judgment' becomes final." Johnson, *supra*, at 153. However, as the Supreme Court has noted, "in a world of silk purses and pigs' ears, [AEDPA] is not a silk purse in the art of statutory drafting." *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Other courts that have concluded that 28 U.S.C. § 2254 is the proper jurisdictional statute for the type of claim brought by White have not had difficulty in finding ways to apply the other AEDPA provisions. *See, e.g., Cook*, 321 F.3d at 280–81 (concluding that the one-year statute of limitations did not run because the "factual predi-

cate" for challenging prison administrative decision was the revocation of petitioner's parole).

**7.** Our analysis of whether a COA is necessary does not turn on whether White's petition is properly considered under 28 U.S.C. § 2241 or 28 U.S.C. § 2254. Indeed, several circuits have split on these two inquiries, with the Tenth Circuit holding that although § 2241 was the proper jurisdictional statute, a COA was needed, *see Montez v. McKinna*, 208 F.3d 862 (10th Cir.2000), and the Seventh Circuit concluding that § 2254 was the proper vehicle, but a COA was not needed, *see Walker v. O'Brien*, 216 F.3d 626 (7th Cir.2000). These two inquiries are, in fact, distinct and do not hinge on one another. As noted above, whether, in a particular context, § 2241 or § 2254 is the appropriate jurisdictional statute depends on an understanding of the interaction between the text and statutory history of those two statutes. As we explain, however, whether a COA is required depends on an analysis of the facts giving rise to White's claim and the statutory text at issue in § 2253.

The circuits are divided whether the text of § 2253(c)(1)(A) means that a habeas petitioner who challenges a prison administrative decision that affects the execution of his sentence must obtain a COA.[8] The plain text of § 2253, however, suggests that a COA is not necessary in these circumstances. *Cf. Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (stating in context of examining text of § 2254(e)(2) that"[w]e start, as always, with the language of the statute"). Section 2253 is the only habeas statute to use the language "the detention complained of arises out of process issued by a State court." The other major habeas statutes either state, or explicitly reference, that they are triggered when a state prisoner is in "custody pursuant to a State court judgment." *See* 28 U.S.C. § 2254 (standard of review); 28 U.S.C. § 2244(d)(1) (one-year statute of limitations); 28 U.S.C. § 2244(b)(2) (prohibition on "second or successive" petitions which explicitly references § 2254).

There are two significant linguistic differences between § 2253 and the other statutes that suggest that the clause in § 2253 should not be read as co-extensive with § 2254, 28 U.S.C. § 2244(d)(1) and 28 U.S.C. § 2244(b)(2). First, § 2253 includes the additional words "the detention complained of." Second, in place of the word "judgment" in §§ 2254 and 2244, § 2253 uses the word "process." These two changes, when read together, suggest that unlike the other AEDPA provisions

where the inquiry is solely a *status inquiry, i.e.* whether the state prisoner is in state custody pursuant to a state court judgment, here the text shifts to an inquiry under § 2253 regarding the target of the prisoner's complaint.

■ It is axiomatic that when Congress uses different text in "adjacent" statutes it intends that the different terms carry a different meaning. *See Legacy Emanuel Hosp. and Health Ctr. v. Shalala,* 97 F.3d 1261, 1265 (9th Cir.1996) (rejecting government's argument that "no significance should attach to Congress's use of different terms in adjacent [Medicare] provisions" because "the use of different language by Congress creates a presumption that it intended the terms to have different meanings"). Section 2253, by focusing on the target of the habeas petitioner's complaint, narrows the inquiry to whether the target of the petition "arises out of process issued by a State court." According to the Oxford English Dictionary (2d Ed.1989), "arise" means "Of circumstances viewed as results: To spring, originate, or result *from (of* obs.)." *See also* Webster's Third New International Dictionary ("arise" means "to originate from a specified source").

■ Here, the target of White's state and federal petitions was the Washington DOC's decision to transfer him to, and incarcerate him in, CCCF in Colorado.[9] As White alleged in his pro se state peti-

8. *See Coady v. Vaughn,* 251 F.3d 480 (3d Cir.2001) (holding that COA is necessary); *Greene v. Tennessee Dep't. of Corrections,* 265 F.3d 369 (6th Cir.2001) (same); *Montez v. McKinna,* 208 F.3d 862 (10th Cir.2000) (same); *Medberry v. Crosby,* 351 F.3d 1049 (11th Cir.2003) (same); *Madley v. U.S. Parole Commission,* 278 F.3d 1306 (D.C.Cir.2002) (same). *But see Walker v. O'Brien,* 216 F.3d 626 (7th Cir.2000) (holding that a COA is not necessary).

9. White further alleges that his confinement after DOC transferred him to CCCF, including his confinement after his return to a Washington state prison, violated his federal constitutional rights. As White explained in his federal habeas petition: "When WDOC transferred custody they forever lost 'Legal' jurisdiction and authority over Petitioner."

tion: "Respondent . . . has no legal authority to hold petitioner within Crowley County Correctional Facility." *See also* White's federal habeas petition ("This is not a collateral attack on my conviction. This is a Constitutional Rights Suit against Washington State and the Washington State Department of Corrections."). The immediate detention that White challenged in his federal petition was his imprisonment in CCCF, which literally "originates" or "springs" from the DOC's decision. *See Walker*, 216 F.3d at 637 ("[W]e do not see how we can construe the words 'process issued by a State court' to mean 'process not issued by a State court,' but instead the outcome of an internal prison disciplinary proceeding").

Had Congress intended that every state prisoner obtain a COA before appealing, irrespective of the nature of the challenge, it easily could have said so. *Cf. Williams*, 529 U.S. at 432, 120 S.Ct. 1479 ("Had Congress intended a no-fault standard, it would have had no difficulty in making its intent plain. It would have had to do no more than use, in lieu of the phrase "has failed to," the phrase "did not." "). As the Seventh Circuit noted in *Walker*, if this gap in the text of § 2253 was an oversight by Congress, it is an oversight that could easily be corrected "[b]ut until then, we see no statutory authorization for imposing the CA [COA] requirement on appeals in which the complained of detention does not arise from process issued by a state court." 216 F.3d at 638. *See also Montez*, 208 F.3d at 869 ("[I]f Congress had intended for all state habeas petitioners to obtain a COA, it simply would have stated in § 2253(c)(1)(A) that a COA is needed to appeal a final order in any habeas corpus proceeding brought by a state prisoner") (McKay, J., dissenting in part).

We note with approval several of the Seventh Circuit's observations as to why the text in § 2253 should not be stretched to require a COA in this situation. Prison disciplinary proceedings are "less formal" than court proceedings, and in some states prison disciplinary proceedings are unreviewable. *Walker*, 216 F.3d at 637. Further,"there is good reason to accord greater finality to state court proceedings where the full range of procedural protections for a defendant apply, than to prison disciplinary proceedings." *Id.* at 638. This conclusion merely maintains consistency between the procedures for federal and state prisoners, since it is well-established that the COA requirement does not apply to federal prisoners who challenge the execution of their sentence under 28 U.S.C. § 2241. *Id.* Finally, this rule is easy to administer by the district courts because "they need only ascertain the source of the detention (state court process or something else), and the need or not for a CA [COA] will be apparent." *Id.*

We add that the interests in federalism that AEDPA was designed to protect have less force in this situation. First, the COA requirement is solely about *this court's* jurisdiction; petitioners such as White have already exhausted all of their state remedies and have litigated their habeas petitions in the district court. Thus, a state's interest in ensuring that state courts have the first opportunity to review administrative decisions of their own prison officials has already been given due deference. *Cf. Preiser v. Rodriguez*, 411 U.S. 475, 492, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons."). Moreover, any incremental interest in finality seems slight because even if we were to hold that a COA is required, a

petitioner would still have the option of seeking a COA from this court when the district court declined to grant one. In light of the minimal comity interests at stake in this precise context, and the different intent evidenced by the text in § 2253, extending the COA requirement to this situation is neither required by the text of § 2253 nor is warranted by unique policy considerations. Accordingly, we hold that because White's habeas petition challenged his detention that resulted from the DOC's administrative decision, a COA is not required for this court to assert jurisdiction over his appeal.

### C. White Has No Constitutional Right to Imprisonment In a Particular Prison

White argues that his transfer from Washington to Colorado and back violated both a substantive liberty interest protected by the Due Process Clause of the Fourteenth Amendment, and a state-created liberty interest. We reject both claims.

■ White's transfer did not violate any independent substantive liberty interest protected by the Due Process Clause. White alleges his liberty interests were violated because as a result of the transfer he served part of his sentence in a different state than where he was convicted, was unable to receive visitors or see counsel, and was transferred to a private prison solely motivated by profit. However, the Supreme Court in *Olim v. Wakinekona* rejected this type of argument. 461 U.S. 238, 247–48, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) ("Even when, as here, the[prison] transfer involves long distances and an ocean crossing [from Hawaii to California],

the confinement remains within constitutional limits."). Incarceration in a private prison does not change this analysis because state prison facilities have never "been exclusively public." *Richardson v. McKnight,* 521 U.S. 399, 405, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (discussing history of private penal institutions); *see also Montez,* 208 F.3d at 866–69 (holding no due process violation in transferring prisoner to out-of-state private prison). The state court's determination that White's due process claim failed was not "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

■ White's argument that Washington state law created a state liberty interest protected by the Due Process Clause similarly fails. In *In re Matteson,* the Washington Supreme Court explicitly upheld the DOC's authority to authorize this transfer under state law. 142 Wash.2d 298, 12 P.3d 585, 590–91 (2000). The Washington Supreme Court's holding on this issue precludes White's argument. *See Olim,* 461 U.S. at 249–250, 103 S.Ct. 1741 ("Hawaii's prison regulations place no substantive limitations on official discretion and thus create no liberty interest entitled to protection under the Due Process Clause ... [A]s the Supreme Court of Hawaii has held in *Lono v. Ariyoshi* [citation omitted], the prison administrator's discretion to transfer an inmate is completely unfettered.").[10]

■ In sum, we hold that § 2254 was the proper jurisdictional statute for White's habeas petition, that he did not need to obtain a COA for this court to

---

**10.** White's further claim that Washington forfeited the right to imprison him as a result of his transfer is unpersuasive. There is no support in the Due Process Clause for such a proposition. Moreover, the Kentucky case that White cites in support of his forfeiture theory relies on Kentucky law and has, in fact, been expressly repudiated by the Kentucky courts. *See Commonwealth v. Hale,* 96 S.W.3d 24, 37–8 (Ky.2003) (overruling *Yost v. Smith,* 862 S.W.2d 852 (Ky.1993)).

assert jurisdiction over his appeal, and that White's constitutional challenge to his transfer to CCCF, and his continued detention thereafter, were properly rejected by the district court. Accordingly, the judgment of the district court is

**AFFIRMED.**